UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
WILLIE MARSHALL LEE,

Plaintiff,

-against-

UNITED PARCEL SERVICE, *d/b/a* UPS,

Defendant.
---------------------------------------------------------------x

**MEMORANDUM AND ORDER**
24-CV-04316 (OEM) (LKE)

ORELIA E. MERCHANT, United States District Judge:

On June 18, 2024, plaintiff Willie Marshall Lee ("Plaintiff") commenced this negligence action against the United Parcel Service, doing business as UPS ("Defendant"). *See* Verified Complaint, Dkt. 1 ("Complaint" or "Compl."). Plaintiff alleges that he "was caused to violently fall to the ground due to a dangerous, defective, cracked, raised and unsafe median existing in the parking lot" of one of Defendant's shipping stores and sustained serious injuries. *Id.* ¶ 14.

This matter is set for a jury trial. Before the Court is Defendant's motion to strike the reports and to preclude the opinions and testimony of Plaintiff's liability experts, Dr. William Marletta and David Jimenez ("Defendant's Motion"). *See* Memorandum of Law to Strike the Reports and to Preclude Opinions and Testimony of Plaintiff's Anticipated Liability Experts, Dr. William Marletta and Mr. David Jim[e]nez, Dkt. 27 ("Mem."); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Strike the Reports and Preclude the Testimony of Plaintiff's Experts Dr. William Marletta and Mr. David Jimenez, Dkt. 30 ("Opposition" or "Opp'n"); Reply Memorandum of Law to Strike the Reports and to Preclude Opinions and Testimony of Plaintiff's Anticipated Liability Experts, Dr. William Marletta and Mr. David Jim[e]nez, Dkt. 28 ("Reply").

For the following reasons, Defendant's Motion is denied.

## BACKGROUND

Plaintiff alleges that on May 13, 2024, while carrying two small boxes into Defendant's shipping store located at 136-40 Springfield Boulevard, Springfield Gardens, New York, he "was caused to trip and fall by a dangerous, defective, cracked, raised and unsafe median[1] existing in the parking lot adjacent to the . . . store." Compl. ¶ 13. Plaintiff further alleges that he sustained serious injuries as a result of the fall, and "[p]rior to [those] injuries, [Defendant], its agents, servants and/or employees negligently, carelessly and recklessly permitted and allowed the premises, grounds and appurtenances of the shipping store . . . to become trap-like and unsafe, allowing an exceptionally hazardous tripping condition to exist." *Id.* ¶ 15. According to Plaintiff, Defendant had either actual notice or constructive notice of the median's existence as a hazardous condition but failed to take reasonable measures to correct it. *Id.* ¶¶ 15-17.

The parties have retained competing experts who disagree about the condition, design, and safety of the parking area. Plaintiff retained Dr. William Marletta ("Dr. Marletta"), a Certified Safety Professional, "who inspected and measured the site, reviewed the building plans, deposition testimony, and [Defendant's] expert disclosures, and concluded that the wheel stop was an unmarked, low-contrast tripping hazard that had been installed contrary to the approved plans, that safer alternatives were readily available, and that [Defendant] had prior notice of the hazard." Opp'n at 3; *see* Declaration of Steven P. Orlowski ("Orlowski Decl."), Exhibit E, Dkt. 27-5 ("2024 Marletta Report"); Orlowski Decl., Exhibit G, Dkt. 27-7 ("2025 Marletta Report"). Plaintiff also retained David Jimenez, a registered architect and former New York City Department of Buildings Plan Examiner, "who opined regarding the design and construction of the parking area, the

[1] Although the Complaint refers to the condition as a "median," the parties' Motion papers refer to it as a "tire stop" or "wheel stop." *See generally* Mem.; Opp'n; Reply.

applicable codes and industry standards, and safer alternative designs." Opp'n at 3; *see* Orlowski Decl., Exhibit J, Dkt. 27-10 ("Jimenez Report").

**LEGAL STANDARD**

Federal Rule of Evidence 702 ("Rule 702") governs the admissibility of expert testimony. It provides that a person "qualified as an expert by knowledge, skill, experience, training, or education" may offer opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. It is well-established "that Rule 702 embodies a liberal standard of admissibility for expert opinions." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005). "The proffering party bears the burden of establishing admissibility under Rule 702 by showing that (1) the expert is qualified; (2) the proposed opinion is based on reliable data and methodology; and (3) the proposed testimony would be helpful to the trier of fact, but the district court serves as the 'ultimate gatekeeper' against unreliable expert testimony." *Red Hawk, LLC v. Colorforms Brand LLC*, 638 F. Supp. 3d 375, 380 (S.D.N.Y. 2022) (quoting *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007)). In fulfilling this gatekeeping role, district courts also look to the standards of Federal Rule of Evidence 401 ("Rule 401") to "determine whether the proffered expert testimony is relevant, *i.e.*, whether it 'ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins.*, 239 F.3d 179, 184 (2d Cir. 2001) (alteration in original) (quoting FED. R. EVID. 401).

## DISCUSSION

Defendant moves to strike Dr. Marletta's and Jimenez's reports in their entirety and preclude them from testifying at the time of trial. Mem. at 1, 17. In support of its Motion, Defendant raises two principal arguments: first, that their reports and anticipated testimony are not relevant to the facts of the case, *id.* at 14-15, and second, as to Dr. Marletta only, that his report and anticipated testimony are not the product of reliable principles and methods, *id.* at 15-16. The Court addresses each argument in turn.

### A. Relevance

First, Defendant contends that Dr. Marletta's and Jimenez's opinions are not relevant and will not help the trier of fact understand the evidence or determine a fact at issue. *Id.* at 14-15. Specifically, Defendant asserts that Dr. Marletta and Jimenez's reliance on safety standards that have not been adopted by the New York City Department of Buildings renders their opinions irrelevant. *Id.* at 4, 12, 14. Further, Defendant asserts that Dr. Marletta and Jimenez's discussion of handicap accessibility requirements have no probative value given Defendant's purported compliance with those requirements and a lack of evidence that the accident occurred as a result of a handicap accessibility issue. *Id.* at 4-5, 14. In response, Plaintiff argues that "accepted industry customs and nationally recognized safety standards remain admissible evidence of the applicable standard of care whether or not they have been codified," and that Defendant "attempts to convert ordinary disagreements with [the experts'] opinions into questions of admissibility." Opp'n at 1-2.

"Under New York law, a tort plaintiff seeking to prove a defendant's negligence must show: '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Borley v. United States*, 22 F.4th 75, 78 (2d Cir.

2021) (quoting *Akins v. Glens Falls City Sch. Dist.*, 424 N.E.2d 531, 535 (N.Y. 1981)). "[L]andowners owe people on their property a duty of reasonable care under the circumstances to maintain their property in a safe condition." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Maheshwari v. City of New York*, 810 N.E.2d 894, 897 (N.Y. 2004)). Although safety standards are not dispositive on the issue of negligence, "they are admissible as 'some evidence of the applicable standard of care.'" *Batista v. Metro. Transp. Auth.*, 20-cv-1254 (LJL), 2021 WL 2894351, at *8 (S.D.N.Y. July 9, 2021) (quoting *Tufariello v. Long Island R.R.*, 458 F.3d 80, 91 (2d Cir. 2006)); *see also Trimarco v. Klein*, 436 N.E.2d 502, 506 (N.Y. 1982). Further, even where relevant safety standards are codified, compliance with such standards is not dispositive on the issue of negligence. *See Nipon v. Yale Club of N.Y.C.*, 13 Civ. 1414(HBP), 2014 WL 6466991, at *7 (S.D.N.Y. Nov. 18, 2014) ("Even if the step did comply with the New York City Building Code . . . that fact would not be dispositive of the issue of negligence. Compliance with a building code does not establish due care; compliance is only some evidence of due care."); *Lamuraglia v. N.Y.C. Transit Auth.*, 749 N.Y.S.2d 82, 86 (2d Dep't 2002) ("Although Premium complied with applicable regulations . . . this bare minimum compliance is only some evidence of due care.").

Here, in developing their opinions, Dr. Marletta and Jimenez reference American Society for Testing and Materials ("ASTM") Standard F1637, which "provides guidelines for the design, construction, and maintenance of safe walking surfaces." Jimenez Report at 4-5; 2024 Marletta Report at 10-14. Defendant contends that because "ASTM F1637 has never been adopted by any of the New York City Model Building Codes," Mem. at 4 (citing Orlowski Decl., Exhibit F at 19, Dkt. 27-6 ("Chen Report")), Dr. Marletta's and Jimenez's opinions relying on that standard are irrelevant and will confuse the jury, *id.* at 14.

Defendant's argument is misguided. Plaintiff does not allege negligence *per se*, where "an unexcused violation of a statutory standard of care, if unexplained," establishes liability. *Dalal v. City of New York*, 692 N.Y.S.2d 468, 469 (2d Dep't 1999). Instead, Plaintiff alleges negligence, where the duty of care for landowners is not statutory, but rather "reasonable care under the circumstances to maintain their property in a safe condition." *Williams*, 453 F.3d at 116 (quoting *Maheshwari*, 810 N.E.2d at 897). Relevant safety standards, whether codified are not, "are admissible as 'some evidence of the applicable standard of care.'" *Batista*, 2021 WL 2894351, at *8 (quoting *Tufariello*, 458 F.3d at 91). ASTM F1637 is relevant here in that Defendant's asserted noncompliance with ASTM F1637 walking surface guidelines would make it more probable that Defendant failed to take reasonable care under the circumstances. *See* FED. R. EVID. 401. Further, to the extent that Defendant is concerned about juror confusion regarding the applicable standard of care, the probative value of the opinions relying on ASTM F1637 are not substantially outweighed by the danger of confusion, *see* FED. R. EVID. 403, and any potential confusion can be "cured by jury instructions and by the careful presentation of evidence by competent counsel," *United States v. Feyrer*, 333 F.3d 110, 115 (2d Cir 2003). Accordingly, Defendant's Motion to preclude the reports and testimony of Dr. Marletta and Jimenez on the grounds of their reliance on ASTM F1637 is denied.

Defendant also takes issue with Dr. Marletta and Dr. Jimenez's reliance on the handicap accessibility standards of American National Standards Institute ("ANSI") A117.1 and the Americans with Disabilities Act ("ADA"). Mem. at 14. Specifically, Defendant contends that these standards are irrelevant because it was "mere happenstance" that Plaintiff tripped over a tire stop in a handicap parking spot, and because it is undisputed that Plaintiff was not handicapped at the time of the accident. *Id.* at 5, 14. Referencing the report of its own expert, Defendant further

contends that it was in full compliance with the requirements of ANSI A117.1 and the ADA. Mem. at 5 (citing Chen Report at 11-17).

Defendant's arguments are unavailing. Rule 401 establishes a "low threshold" for relevance that is "easily satisfied." *United States v. Gramins*, 939 F.3d 429, 450 (2d Cir. 2019). Regardless of whether it was "mere happenstance" that the accident occurred in a handicap parking spot and whether it is undisputed that Plaintiff was not disabled at the time of the accident, ANSI A117.1 and the ADA prescribe safety standards that are relevant to whether Defendant took "reasonable care under the circumstances to maintain their property in a safe condition." *Williams*, 453 F.3d at 116 (quoting *Maheshwari*, 810 N.E.2d at 897); *see* FED. R. EVID. 401. Further, Defendant's assertion that it was in full compliance with the requirements of ANSI A117.1 and the ADA does not render Dr. Marletta's and Jimenez's opinions inadmissible. Notwithstanding that Defendant is effectively disputing the factual assumption that it was not in compliance, which goes to weight, not admissibility, *see Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009), compliance with codified safety standards is not dispositive on the issue of negligence, *see Nipon*, 2014 WL 6466991, at *7; *Lamuraglia*, 749 N.Y.S.2d at 86. Accordingly, Defendant's Motion to preclude the reports and testimony of Dr. Marletta and Jimenez on the grounds of their reliance on ANSI A117.1 and the ADA is denied.

Defendant's other relevance challenges are similarly unavailing. Defendant raises various arguments seeking to exclude specific portions of Dr. Marletta's and Jimenez's opinions; however, each argument either goes to weight, not admissibility, is overcome by the low relevance threshold, or is based upon Defendant's misguided view of the applicable standard of care. *See* Mem. at 5-12.

First, Defendant seeks to exclude Dr. Marletta's opinion that the space between the tire stop and Defendant's building was insufficient. *See* Mem. at 7. In doing so, Defendant argues that Dr. Marletta's opinion is irrelevant because it is based upon an erroneous assumption that the space between the tire stop and the building is a sidewalk. *Id.* This is a challenge to a factual assumption underlying Dr. Marletta's opinion and therefore goes to weight, not admissibility. *See Zerega Ave. Realty Corp.*, 571 F.3d at 214. The same reasoning applies to Dr. Marletta's opinion that Defendant was on notice of the tire stop being a hazardous condition due to prior accidents. *See* Mem. at 9-10. Defendant contends that the prior accidents are irrelevant because they are "totally unrelated," but that argument effectively challenges Dr. Marletta's factual assumption that the accidents were similar to the one here. *Id.* at 10. Therefore, Defendant's argument goes to weight, not admissibility. *See Zerega Ave. Realty Corp.*, 571 F.3d at 214.

Next, Defendant seeks to exclude Dr. Marletta's opinions about Defendant's failure to keep the parking area free from hazardous conditions. Mem. at 7-8. In doing so, Defendant argues that the photographs taken by Plaintiff show that the parking area was well maintained and that the tire stop was in good condition. *Id.* Defendant's argument, therefore, is that Dr. Marletta's conclusion is incorrect; this goes to weight, not admissibility. *See M.B. ex rel. Scott v. CSX Transp. Inc.*, 130 F. Supp. 3d 654, 665 (N.D.N.Y. 2015) ("[A]rguments that an expert's conclusions are wrong, 'go to the weight of the evidence, not to its admissibility.'" (quoting *Campbell*, 239 F.3d at 186)).

Defendant also seeks to exclude Dr. Marletta's discussion of how the site plans of the parking area do not match the completed construction. Mem. at 9. Defendant contends that the asserted discrepancy is irrelevant as it has "no impact on whether or not the mere existence of the tire stop in the parking lot constituted negligence on the part of the tenant, [Defendant]. *Id.* (citing 2025 Marletta Report at 11-16). However, as noted above, relevance is a low bar. *See Gramins*,

939 F.3d at 450. To prove negligence, Plaintiff is required to prove that Defendant failed to take reasonable care to maintain its property in a safe condition. *See Williams*, 453 F.3d at 116. Plaintiff's theory for doing so is that the tire stop constituted a tripping hazard, and that Defendant was on notice of the hazard but failed to remedy it. *See* 2024 Marletta Report at 30-31. Accordingly, Dr. Marletta's discussion of the discrepancy between the site plans and the completed construction, which "show[s] that wheel stops were not supposed to be installed" where they were, makes it more probable, at least marginally, that the tire stop constituted a hazardous condition. 2025 Marletta Report at 27; *see* FED. R. EVID. 401; *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008) (finding that evidence passed the "very low standard for relevance" where it "was at least marginally relevant to the allegations in th[e] case"); *United States v. Quattrone,* 441 F.3d 153, 188 (2d Cir. 2006) ("[S]o long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry."). To the extent Defendant contends that the probative value of the site plan discrepancy is substantially outweighed by the danger of unfair prejudice, *see* FED. R. EVID. 403, any potential prejudice can be mitigated by cross-examination, *see United States v. DeLillo*, 620 F.2d 939, 947 (2d Cir. 1980) (noting that any possibility of undue prejudice can be offset by cross-examination); *see also Reyes v. Artuz*, 99-CV-801 (FB), 2000 WL 1804706, at *3 (E.D.N.Y. Dec. 5, 2000) (noting that parties can cross-examine expert witnesses "and call to the attention of the factfinder the reasons for giving scant weight to the witnesses' testimony"). Therefore, Dr. Marletta's discussion of the site plan issue is relevant to Defendant's alleged negligence.

Similar relevance reasoning applies to Jimenez's discussion of exit and egress. In forming his opinion on the dangerousness of the tire stop and the cause of Plaintiff's injury, Jimenez relies

on New York City Building Code, International Building Code, and Occupational Safety and Health Administration standards for safe exit and egress from buildings into public spaces. *See* Jimenez Report at 2-4, 24. Defendant argues that because it is undisputed that Plaintiff was in the process of entering the building when the accident occurred, safety standards concerning exit are irrelevant. Mem. at 11-12; *see* Compl. ¶ 13 (alleging that Plaintiff tripped while carrying boxes into Defendant's store). However, even though it is undisputed that Plaintiff was entering the building, Defendant's asserted failure to comply with exit and egress safety standards makes it more likely that it failed to maintain its property in a safe condition. *See* Jimenez Report at 2-4 (describing safety standards which concern unobstructed access to public ways outside exit doors); *id.* at 13 (showing pictures of the tire stop Plaintiff tripped over, which is directly outside the entrance/exit of Defendant's building); *Al-Moayad*, 545 F.3d at 176; *Quattrone,* 441 F.3d at 188. To the extent Defendant argues that the probative value of Jimenez's discussion of exit and egress safety standards is substantially outweighed by the danger of unfair prejudice, *see* FED. R. EVID. 403, any potential prejudice can be mitigated by cross-examination, *see DeLillo*, 620 F.2d at 947; *see also Reyes*, 2000 WL 1804706, at *3. Accordingly, Jimenez's discussion of exit and egress safety standards is relevant to the issue of negligence. *See Williams*, 453 F.3d at 116; FED. R. EVID. 401.

Finally, Defendant seeks to exclude Dr. Marletta's and Jimenez's discussions regarding alternative methods to prevent building intrusion. Mem. at 10, 12-13. Both experts suggest that concrete bollards are a safer alternative to tire stops to prevent cars from coming in contact with buildings. *See* 2025 Marletta Report at 20; Jimenez Report at 4, 22-24. Defendant contends that these discussions "provide no probative value" because concrete bollards are not required by the New York City Building Code. Mem. at 10, 12-13. However, as discussed above, the New York

City Building Code does not prescribe the applicable standard of care, and whether Plaintiff could have included safer features than tire stops in the parking lot is relevant to whether Defendant took "reasonable care under the circumstances to maintain [its] property in a safe condition." *Williams*, 453 F.3d at 116 (quoting *Maheshwari*, 810 N.E.2d at 897); *see* FED. R. EVID. 401. Defendant's attempt to exclude Dr. Marletta's and Jimenez's discussions of alternative methods to prevent building intrusion on the grounds of relevance is therefore unavailing.

Accordingly, Defendant's Motion to preclude the reports and testimony of Dr. Marletta and Jimenez for lack of relevance is denied.

**B. Reliable Principles and Methods**

In addition to its relevance challenges, Defendant asserts that Dr. Marletta's report and anticipated testimony are not the product of reliable principles and methods. *See* Mem. at 15-16. In response, Plaintiff contends that Defendant's challenges do not go to Dr. Marletta's methodology, but rather the correctness of his conclusions. *See* Opp'n at 10-11.

Defendant specifically challenges Dr. Marletta's opinion regarding the lack of contrast between the tire stop and the asphalt surface of parking lot. *See* Mem. at 5-6, 15-16. On this issue, Dr. Marletta analyzed the Light Reflectance Value ("LRV") taken with a contrast meter and found that the tire stop had an LRV of 5 while the underlying asphalt surface had an LRV of 12. 2024 Marletta Report at 18. Dr. Marletta noted that "[a]lthough not yet adopted into our codes, research from multiple sources supports that at least a 30-point [LRV] difference, at a minimum, between surfaces is needed to provide surface contrast acceptable for handicapped use," *id.*, and thereby concluded that "there is no significant difference in contrast between the wheel stop and parking area exterior surfaces," *id.* at 16. Defendant argues that because Dr. Marletta does not provide references to any of the "multiple sources" supporting the 30-point LRV differential standard, his

"unsupported opinion [is] insufficient to meet the threshold requirement[s] . . . [of] Rule 702(c)," and his report and testimony should be excluded in their entirety. Mem. at 15-16; *see* FED. R. EVID. 702(c) (requiring that an expert's testimony be the product of reliable principles and methods).

Defendant's reliability argument is unavailing. "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002); *see also Nimely*, 414 F.3d at 396 ("Rule 702 requires a sufficiently rigorous analytical connection between that methodology and the expert's conclusions."). However, an expert need not "back his or her opinion with published studies that unequivocally support his or her conclusions." *Amorgianos*, 303 F.3d at 266; *see McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) ("Disputes as to the . . . lack of textual authority for [an expert's] opinion[] go to the weight, not the admissibility, of [an expert's] testimony."). Here, Defendant does not challenge the reliability of Dr. Marletta's LRV methodology, nor does Defendant challenge the analytical connection between LRV and Dr. Marletta's conclusion regarding the lack of contrast between asphalt and the tire stop. Rather, Defendant challenges Dr. Marletta's failure to identify the "multiple sources" supporting the 30-point LRV differential standard. *See* Mem. at 6, 15. This dispute as to a lack of textual support for Dr. Marletta's opinion goes to weight, not admissibility. *See McCullock*, 61 F.3d at 1044. Further, even if the Court were to find Dr. Marletta's LRV contrast opinion unreliable and therefore inadmissible, that finding would not warrant wholesale exclusion of his report and testimony, as Defendant suggests. *See In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 665 (2d Cir.

2016) (reasoning that the entirety of an expert's testimony should not be excluded on the basis of an error in "one small part" of the analysis).

Accordingly, Defendant's Motion to preclude Dr. Marletta's report and anticipated testimony as unreliable is denied.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to strike the reports and to preclude the opinions and testimony of Dr. Marletta and Jimenez is denied.

SO ORDERED.

/s/
ORELIA E. MERCHANT
United States District Judge

September 2, 2026
Brooklyn, New York